# EXHIBIT B

Electronically Filed by Superior Court of California, County of Orange, 04/20/2022 03:02:37 PM.
30-2022-01255728-CU-FR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Arlene Gill, Deputy Clerk.
Case 8:22-cv-01153-DOC-ADS Document 1-1 Filed 06/16/22 Page 2 of 20 Page ID #:15

**EDELSBERG LAW, P.A.**
Scott Edelsberg (CA Bar No. 330090)
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320
Fax: 786-623-0915

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Sophia G. Gold (CA Bar No. 307971)
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Putative Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

| | |
|---|---|
| **NATALIE TRISTAN,** individually, and on behalf of all others similarly situated, | Case No.: 30-2022-01255728-CU-FR-CJC |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **BANK OF AMERICA, N.A.,** | |
| Defendant. | |

Plaintiff Natalie Tristan, individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendant Bank of America, N.A. ("BOA," "Bank," or "Defendant") and alleges as follows:

### INTRODUCTION

1.  This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated customers of BOA who have signed up for the Zelle money transfer service and who: have been the victim of fraud on the Zelle service; who have incurred losses due to that fraud that have not been reimbursed by BOA; and who were entitled by the marketing representations of BOA regarding the Zelle service and by the BOA's contract promises to a full reimbursement of losses caused by fraud on the Zelle service.

2.  Zelle is a payment transfer service wholly owned and operated by seven of the largest banks in the U.S.

3.  There are approximately 1,500 member banks and credit unions who participate in the Zelle service. Those members engage in their own significant marketing efforts to encourage their accountholders to sign up for the Zelle service by marketing Zelle as a fast, safe and secure way for consumers to send money. This is false. In fact, there are huge, undisclosed security risks of using the service that BOA omitted from its marketing push to get its accountholders to sign up for Zelle.

4.  BOA prominently touts Zelle to its accountholders as a secure, free and convenient was to make money transfers. However, it misrepresents and omits a key fact about the service that is unknown to accountholders:  that there is virtually no recourse for consumers to recoup losses due to fraud.  Indeed, <u>unlike</u> virtually every other payment method commonly used by American consumers—debit cards, credit cards, and checks—there is a no protection for accountholders who are victims of fraud, and virtually no recourse for accountholders attempting to recoup losses due to fraud.

5.  The unique, misrepresented, and undisclosed architecture of the Zelle payment system means—again, unlike other payment options commonly used by American consumers—

that virtually any money transferred for any reason via Zelle is gone forever, without recourse, reimbursement or protection.

6.  Worse, BOA misrepresents and omits the truth about a secret policy it has adopted: it does not and will not reimburse its accountholders for losses via Zelle due to fraud, even where those losses are timely reported by accountholders.

7.  BOA was required not to misrepresent the unique and dangerous features of the Zelle service in its marketing about it and in contractual representations.  But it failed to do so.

8.  As a result, users like Plaintiff sign up for and use the Zelle service without the benefit of accurate information regarding that service, and later end up with huge, unreimbursed losses due to fraud.  Such users never would have signed up for Zelle in the first place if they had known the extreme risks of signing up for and using the service.

9.  As a member of the Zelle network, the risks are well known to BOA but are omitted from all of its marketing regarding Zelle.

10.  As a recent New York Times investigation showed, fraud on the Zelle network is a widespread scourge of which bank is well aware. Quoting an industry expert, the *Times* reported:

> "Organized crime is rampant," said John Buzzard, Javelin's lead fraud analyst. "A couple years ago, we were just starting to talk about it" on apps like Zelle and Venmo, Mr. Buzzard said. "Now, it's common and everywhere."
>
> The banks are aware of the widespread fraud on Zelle. When Mr. Faunce called [his bank] to report the crime, the customer service representative told him, "A lot of people are getting scammed on Zelle this way." Getting ripped off for $500 was "actually really good," Mr. Faunce said the rep told him, because "many people were getting hit for thousands of dollars."

https://www.nytimes.com/2022/03/06/business/payments-fraud-zelle-banks.html (last accessed March 28, 2022).

11.  Had Plaintiff and the Class members known of the true operation and risks of the Zelle service—risks BOA alone was aware of and actively misrepresented—they would not have signed up for and used the Zelle service.

12.     Plaintiff and the Class members have been injured by signing up for and using the Zelle service. Plaintiff brings this action on behalf of herself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Bank of America and Zelle from continuing to engage in its illegal practices as described herein.

## PARTIES

13.     Plaintiff Natalie Tristan is a citizen and resident of Orange County, California.

14.     Defendant Bank of America, N.A., is a federally chartered bank with its principal place of business in Charlotte, North Carolina. BOA operates and conducts business, throughout, the State of California.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to the other trial courts.

16.     Plaintiff is informed and believes that the State of California has personal jurisdiction over the Defendant named in the action because Defendant is a company authorized to conduct and does conduct business in this State. Defendant is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market, including in the County of Orange, which has caused both obligations and liability of Defendant to arise in the County of Orange.

17.     The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTUAL ALLEGATIONS

**A.     Overview**

18.     It is free to sign up with Zelle, and in fact Zelle is integrated into the websites and mobile apps of BOA.  In marketing and within the website and app itself, BOA encourages its accountholders to sign up for the Zelle service—a sign up that occurs quickly within the BOA

website or mobile app.  During that sign-up process, a user provides basic information to Zelle to link into the Zelle network.

19.    While Zelle provides a link to what it calls a "User Agreement" on its website, at no time during the sign-up process on the bank's website or app did Plaintiff agree to be bound by that document.

20.    Sign up for the Zelle service allows the fast transfer of account funds to other Zelle users.

21.    Created in 2017 by the largest banks in the U.S. to enable instant digital money transfers, Zelle is by far the country's most widely used money transfer service. Last year, people sent $490 billion in immediate payment transfers through Zelle.

22.    The Zelle network is operated by Early Warning Services, a company created and owned by seven banks, including Defendant: Bank of America, Capital One, JPMorgan Chase, PNC, Truist, U.S. Bank and Wells Fargo.

23.    The Zelle service is very popular, but it also has a massive fraud problem—in no small part because of the immediacy with which money transfers are made on the service.  If a fraudster removes money from a Zelle user's bank account, either directly or by fooling the Zelle user to transfer money, those funds are unrecoverable to the consumer.

24.    Nearly 18 million Americans were defrauded through scams involving person-to-person payment apps like Zelle in 2020 alone, according to Javelin Strategy & Research, an industry consultant.

25.    Organized crime is rampant on Zelle and other similar person-to-person transfer services.

26.    The 1500 banks and credit unions who are members of the Zelle network, including BOA, know full well that they have a widespread fraud problem on their hands, but have misrepresented and failed to take steps to warn their accountholders of these risks—or protect their accountholders who fall prey to fraud.

27.     For example, a common scam involves a scammer impersonating a bank employee and requesting that the accountholder transfer money to a different bank account for testing purposes. Unsuspecting Zelle users, tricked into making a fraudulent transfer, in many cases send hundreds or thousands of dollars to fraudsters.

28.     In another very common scheme, a Zelle user's phone is stolen and Zelle transfers are made from the stolen phone to the fraudster.

29.     In short, and unbeknownst to average Zelle users, the Zelle network has become a preferred tool for fraudsters like romance scammers, cryptocurrency con artists and those who use social media sites to advertise fake concert tickets and purebred puppies.

30.     Scams like these are rampant on the Zelle network precisely because of the design and architecture of the network, specifically that money transfer is instantaneous and unrecoverable. Indeed, there is virtually no recourse for consumers to recoup losses due to fraud, unlike other payment methods commonly used by American consumers—debit cards, credit cards, and checks. Zelle provides no protection for accountholders who are victims of fraud, and BOA provides virtually no recourse for accountholders attempting to recoup losses due to fraud.

31.     The unique, misrepresented, and undisclosed architecture of the Zelle payment system and BOA's own fraud policies means—again, unlike other payment options commonly used by American consumers—that virtually any money transferred for any reason via Zelle is gone forever, without recourse, reimbursement or protection for victimized accountholders.

**B.      BOA Falsely Markets Zelle as a Safe and Secure Way to Transfer Money, Omits Information Regarding the Extreme Risks of Signing Up for and Using the Service, and Misrepresents Fraud Protections Regarding Zelle in its Account Contract**

32.     In its marketing about Zelle and during the Zelle signup process within the Bank's mobile app or website, the Bank makes repeated promises that Zelle is a "fast, **safe** and easy way to send and receive money" (emphasis added).

33. It also promises: "Move money in the moment. It's simple and **secure** – with lots of people you know" (emphasis added),

34. At no time in its marketing or during the sign-up process does BOA warn potential users of the true security risks of using the Zelle service—including the risk of fraud and the risk that fraudulent losses will never be reimbursed by BOA.

35. Zelle's services can cause unsuspecting consumers like Plaintiff to incur massive losses on their linked bank accounts.

36. BOA misrepresents (and omits facts about) the true nature, benefits, and risks of the Zelle service, functioning of which means that users are at extreme and undisclosed risk of fraud when using Zelle. Had Plaintiff been adequately informed of these risks, she would not have signed up for or used Zelle.

37. The Bank's marketing representations about Zelle—including within its app and website—misrepresent and never disclose these risks and material facts, instead luring accountholders to sign up for and use the service with promises of ease, safety and security.

38. These representations—which all users view during the sign-up process—are false and contain material omissions.

39. BOA misrepresents the true nature, benefits and risks of the service, which burden users with an extreme and undisclosed risk of Zelle causing losses due to fraud. Plaintiff would not have used Zelle if she had been adequately informed of the risks.

40. The Bank's misrepresentations and omissions are especially pernicious because BOA alone knows a crucial fact regarding Zelle transfers that occur on its accountholders' accounts: as a matter of secret bank policy, fraud-induced Zelle transfers will almost never be reimbursed to accountholders.

41. Indeed, upon information and belief, BOA maintains secret policy whereby it refuses to reimburse fraud losses incurred via Zelle, even where its accountholders timely inform BOA of the fraud.

42. It misrepresents and fails to disclose this secret policy.

43. Further, BOA's Deposit Agreement & Disclosures applicable to consumer accounts repeatedly promises users that, if they timely report fraud, such fraud will be fairly investigated and accountholders will not be liable for fraudulent transfers:

**Consumer's Liability for Unauthorized Transfers**
Tell us AT ONCE if you believe your card or your personal identification number (PIN) or other code has been lost or stolen. Also, tell us AT ONCE if you believe that an electronic fund transfer has been made without your permission using information from your check. The best way to keep your possible losses down is to call us immediately. Your losses could include all of the money in your account plus, if you have an overdraft protection plan linked to your account, any transfers from another account or any advances on a credit line.

If you tell us within two business days after you learn of the loss or theft of your card or code, you can lose no more than $50 if someone uses your card without your permission.

If you do NOT tell us within two business days after you learn of the loss or theft of your card or code, and we can prove we could have stopped someone from using your card or code without your permission if you had told us, you could lose as much as $500.

Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us at once. If you do not tell us in writing within 60 days after the statement was mailed to you, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or hospital stay) kept you from telling us, we will extend the time periods.

***Note:*** *These liability rules are established by Regulation E, which does not apply to business deposit accounts. For personal deposit accounts, our liability policy regarding unauthorized debit card or ATM card transactions, and unauthorized Online Banking transactions may give you more protection, provided you report the transactions promptly. Please see the agreement you receive with your ATM or debit card and the Online Banking agreement.*

[…]

**Contact in Event of Unauthorized Transfer; and Lost or Stolen Card, PIN or Other Code**
If you believe your card, PIN or other code is lost or stolen, or learned by an unauthorized person, or that someone has transferred or may transfer money from your account without your permission, notify us immediately by calling the number listed below.
Telephone: 1.800.432.1000

You can also write to us at: Bank of America, P.O. Box 53137, #7405, Phoenix, AZ 85072-3137

You should also call the number or write to the address listed above if you believe a transfer has been made using the information from your check without your permission.

If unauthorized activity occurs, you agree to cooperate during the investigation and to complete a Lost/Stolen Card and Fraud Claims Report or similar affidavit.

[…]

**In Case of Errors or Questions about your Electronic Transfers You May Sign into Online Banking to Report the Error Promptly, or** Call or write us at the telephone number or address below, as soon as you can, if you think your statement or receipt is wrong, or if you need more information about a transfer listed on the statement or receipt.

Call us at 1.800.432.100 during normal Claims Department business hours or write us at Bank of America, P.O. Box 53137, #7405, Phoenix, AZ 85072-3137.

We MUST hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error or problem appeared… We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question… For errors involving new accounts, point of sale, or foreign-initiated transfers transactions, we may take up to 90 days (instead of 45) to investigate your complaint or question… We will tell you the results within 3 business days after completing our investigation. If we decided that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

44.     These provisions are and were reasonably understood by Plaintiff to mean that Plaintiff would not be liable for electronic funds transfers effectuated by fraud.

## C.     Plaintiff's Experience

45.     When Plaintiff signed up for Zelle she was not informed that Zelle's service had a significant "catch" and that significant monetary losses could result from signing up for the service—or that those losses almost never are reimbursed by users' banks or credit unions.

46.     For example, on November 11, 2022, a fraudster transferred $2,150 from Plaintiff's personal bank accounts using the Zelle service.

47.     Plaintiff is a young, college student who was searching for rental apartments online.

48.     In November 2021, Plaintiff was searching for rental apartments and believed she found a potential unit to lease online from a fraudster who went by the name of Orlin Aguilera.

49.     Plaintiff was interested in the purported rental unit and began communicating with the fraudster who informed Plaintiff to submit a rental application and fees to be screened for approval as a tenant.

50.     As the fraudster requested, Plaintiff transferred $150 via Zelle for application fees. Shortly thereafter, the fraudster informed Plaintiff that her application was "approved" and to finalize obtaining the apartment, Plaintiff needed to also transfer via Zelle the security deposit of $800 and first-month's rent of $1,200. Eager to secure the rental, Plaintiff transferred via Zelle an additional $2,000 to the fraudster.

51.     Afterwards, Plaintiff and the fraudster coordinated a day and time for her to move-in and collect the keys. However, on the purported move-in day, Plaintiff arrived at the apartment but Orlin Aguilera, the fraudster, was nowhere to be found. The fraudster repeatedly called Plaintiff with excuses for his tardiness and reassured Plaintiff that he would be arriving promptly with the keys, but he never showed.

52.     At this point, Plaintiff determined she fell victim to fraud and demanded her money be returned. Despite Plaintiff's demand, the fraudster did not return the money and ceased all communications with Plaintiff.

53.     Plaintiff timely informed BOA of the fraud, but BOA refused to reimburse her for the losses.

54.     Specifically, Plaintiff immediately notified BOA once she realized the fraud. Initially, BOA informed Plaintiff that she would be protected from the fraud and should expect a full reimbursement of the funds. Ultimately, however, BOA denied the claim and refused to reimburse Plaintiff her loss.

## CLASS ALLEGATIONS

55.     Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Classes:

All persons with a BOA account who signed up for the Zelle Service and incurred unreimbursed losses due to fraud (the "Class").

All California persons with a BOA account who signed up for the Zelle Service and incurred unreimbursed losses due to fraud (the "California Subclass").

56.     Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

57.     This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

58.     **Numerosity:** The members of the Classes are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Classes is unknown to Plaintiff at this time; however, it is estimated that the Classes are greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

59.     **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

a)     Whether Defendant's representations and omissions about the Zelle service are false, misleading, deceptive, or likely to deceive;

b)     Whether Defendant failed to disclose the risks of using the Zelle service;

c)     Whether Plaintiff and the Class members were damaged by Defendant's conduct;

d)     Whether Defendant's actions or inactions violated the consumer protection statute invoked herein; and

e)     Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

60.     **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Classes. The common questions of law set forth above are numerous and substantial and stem from Defendant's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

61.     **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, Plaintiff and all Class members were similarly injured through Defendant's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Classes, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to Defendant that are unique to Plaintiff.

62.     **Adequacy of Representation:** Plaintiff is an adequate class representative because they are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Classes. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

63.     **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by

individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Defendant, and which would establish potentially incompatible standards of conduct for Defendant and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

### FIRST CAUSE OF ACTION
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**(Asserted on Behalf of the Classes)**

59.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

60.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

61.     Defendant's deceptive conduct related to material omissions and/or material misrepresentations that it provides safe and secure Zelle money transfer service through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

62.     The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

63.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

64.     Defendant's practices as described herein are (a) immoral, unethical, oppressive, and/or unscrupulous and violate established public policy as recognized by, *inter alia*, causing injury to consumers which outweigh any purported benefits or utility.

65.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

66.     Defendant's practices, as described herein, constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers, who expect their bank to fully investigate and protect fraudulent losses incurred using the Zelle service. Moreover, Defendant concealed the security risks of using the Zelle service, including the risk of fraud and the risk that fraudulent losses will never be reimbursed by BOA as a matter of secret policy, is a practice that is likely to deceive a consumer acting reasonably under the circumstances, to the consumer's detriment.

67.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

68.     Among other statutes, laws, and/or regulations, Defendant's acts and practices violate the following statutes, laws, and/or regulations:

   a.   Violating Cal. Civ. Code § 1750, *et seq.*;

   b.   Engaging in conduct in which the gravity of harm to Plaintiff and the Class outweighs the utility of the Defendant's conduct; and/or

   c.   Engaging in acts and/or practices and/or omissions that are immoral, unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweigh its benefits.

   d.   Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly

misrepresenting on its website and mobile app the true risks and operation of its service.

69.     Defendant's acts and practices offend an established public policy of secure electronic money transfers in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

70.     The harm to Plaintiff and the Classes outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

71.     Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

72.     Plaintiff relied on Defendant's misrepresentations.

73.     Had Plaintiff known the true risks of using the Zelle service, she never would have signed up for and used the Zelle service.

74.     As a direct and proximate result of Defendant's unfair, fraudulent, and/or unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into making money transfers with the Zelle service.

75.     As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(Asserted on Behalf of the Classes)**

76.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

77.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with  intent … to dispose  of ... personal

property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading....”

78.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

79.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

80.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Classes, on behalf of the general public, seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting the Zelle service.

81.    Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

82.    Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

### THIRD CAUSE OF ACTION
**Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing
(Asserted on Behalf of the Classes)**

83.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

84.    Plaintiff and members of the Classes contracted with BOA for checking account services, as embodied in the Deposit Agreement & Disclosures.

85.    BOA breached the terms of its contract with consumers when as described herein, BOA failed to fairly investigation reported fraudulent transactions on the Zelle money transfer

service and failed to reimburse accountholders for fraud-induced losses incurred using the Zelle service.

86.    Further, under the law of each of the states where BOA does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

87.    This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

88.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

89.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

90.    Defendant breached the covenant of good faith and fair dealing when it failed to fairly investigation reported fraudulent transactions on the Zelle money transfer service and failed to reimburse accountholders for fraud-induced losses incurred using the Zelle service.

91.    Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

92.    Plaintiff and members of the Classes have performed all of the obligations imposed on them under the contract.

93.    Plaintiff and members of the Classes have sustained monetary damages as a result of BOA's breaches of the contract and covenant of good faith and fair dealing.

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that Defendant's policies and practices as described herein constitute a breach of contract, and a breach of the covenant of good faith and fair dealing or unjust enrichment, violation of California's Unfair Competition Law and/or violation of California's False Advertising Law.

C. Enjoining Defendant from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Punitive and exemplary damages;

H. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

J. Awarding such other relief as this Court deems just and proper.

///

///

///

///

///

///

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: April 20, 2022

Respectfully submitted,

EDELSBERG LAW, P.A.

Scott Edelsberg

KALIELGOLD PLLC
Jeffrey D. Kaliel
Sophia Goren Gold

*Attorneys for Plaintiff and the Putative Class*